IRWIN M. FRIEDMAN
SB NO. 35753
879 West 190th Street
4th Floor
Gardena, California 90248
(310) 217-4080

Attorney for Debtors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In Re:<br><br>Alex Hideki Okuda aka Hideki Okuda, Alex Okuda and Alex H. Okuda and Junko Okuda<br><br>            Debtors. | CASE NO:8:09-bk-20860<br><br>Chapter 13<br><br>(11 U.S.C. §506(a) AND 1322(b); FRBP 3012)<br><br>**NOTICE OF DEBTORS' MOTION AND MOTION FOR ORDER DETERMINING VALUE OF REAL PROPERTY; EXTENT OF SECURED CLAIMS AND EXTINGUISHING THE LIEN OF WASHINGTON MUTUAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT THEREOF**<br><br>**Hearing Information**<br>Date:      December 10, 2009<br>Time:      10:30 am<br>Place:     U.S. Bankruptcy Court<br>               411 West Fourth Street<br>               Santa Ana, CA<br>Courtroom: 5A |

TO: THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE; AMRANE COHEN, CHAPTER 13 TRUSTEE; INDY MAC, RESPONDENT; AND ALL OTHER PARTIES IN INTEREST:

1

Notice of Debtors' Motion For Order Determining Value of Real Property, et al.

**PLEASE TAKE NOTICE THAT** at the above date, time and place, the Debtors, Alex Hideki Okuda and Junko Okuda, by and through counsel, Irwin M. Friedman, will move this Court for orders:

1. Determining the value of certain real property commonly known as 65 Coronado Cay Lane, Aliso Viejo, CA 92656 (the "Real Property"), which was $285,000.00 as of the date of filing;

2. Determining the secured claim of (SENIOR LIEN) Indy Mac with respect to the Real Property which is senior to that of JUNIOR LIEN HOLDER. (Washington Mutual), and that the amount of the JUNIOR LIEN, Washington Mutual's secured claim exceeds the value of the Real Property;

3. Determining that Washington Mutual's claim under 11 U.S.C.§1322(b)(2) and Bankruptcy Rule 3013, is wholly unsecured because the underlying collateral has insufficient equity for a lien to attach;

4. Finding that modification of Washington Mutual's claim is therefore appropriate under 11 U.S.C. §1322(b)(2), and, that Washington Mutual may be provided for as an unsecured claim in the Debtors' Chapter 13 plan;

5. Determining that the lien of Washington Mutual, secured by a second deed of trust under loan number XXXXXXXX5391 and having a payoff balance of $79,463.00 is completely unsecured and upon completion of all plan payments and entry of discharge in this case pursuant to 11 U.S.C. § 1328, the lien will be void and will not constitute an encumbrance on the following described real property: Certain real property commonly known as 65 Coronado Cay Lane, Aliso Viejo, CA 92656, County of Orange, State of California;

6. Determining that for purposes of this Chapter 13 Plan, the underlying debt of Washington Mutual in the amount of $79,463.00 shall be deemed unsecured, and any Proof of Claim filed shall be so treated by the Chapter 13 Trustee for purposes of payment thereon;

7. Determining that upon completion of all plan payments and entry of a discharge in this case, Washington Mutual is ordered to reconvey the Deed of Trust and otherwise take such steps as are required to clear title, free of said lien, as to the above described property; and,

8. Determining that should this case be dismissed or converted to another chapter under title 11 prior to completion of all plan payments and entry of a discharge pursuant to 11 U.S.C. § 1328, the lien shall remain valid.

This Motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the case file, the attached declarations of Alex Hideki Okuda, ("Debtor") and Richard Gould, California licensed real estate appraiser (the "Appraiser"), and such other evidence as may be presented at or before the hearing.

DEADLINE FOR OPPOSITION PAPERS:

Pursuant to Local Rule 9013-1(a)(7), any response to this motion shall be filed with the Clerk of the Court and served on all interested parties no later than fourteen (14) days prior to the above hearing date. Failure to **do so may be deemed as** a **waiver** of objection to the foregoing and deemed by this Court to be consent to the granting of the motion.

Wherefore, Debtors respectfully request this Court:

1. To determine the value of certain real property commonly known as 65 Coronado Cay Lane, Aliso Viejo, CA 92656, County of Orange, State of California (the "Real Property"), to be $285,000.00 as of the data of filing;

2. To determine the **secured claim** of Indy Mac("Indy Mac") with respect to the Real Property is senior to that of Washington Mutual ("Washington Mutual"), and that the amount of Indy Mac's secured claim exceeds the value of the Real Property;

3. To determine that Washington Mutual's claim under 11 U.S.C. §1322(b)(2) and Bankruptcy Rule 3013, is wholly unsecured because the underlying collateral has insufficient equity for a lien to attach;

4. To find that modification of Washington Mutual's claim is therefore appropriate under 11 U.S.C. §1322(b)(2), and, that Washington Mutual may be provided for as an **unsecured claim** in the Debtors' Chapter 13 plan;

5. To determine that the lien of Washington Mutual secured by a second deed of trust under loan number **XXXXXXXX5391** and having a payoff balance of $79.463.00 is completely unsecured and upon completion of all plan payments and entry of discharge **in** this case pursuant to 11 U.S.C. § 1328, the lien will **be** void and will not constitute an encumbrance on the following described real property: Certain real property commonly known as 65 Coronado Cay Lane, Aliso Viejo, CA 92656, County of Orange, State of California;

6. To determine that for purposes of this Chapter 13 Plan, the underlying debt of Washington Mutual in the amount of $79,463.00 shall be deemed unsecured, and any Proof of Claim filed shall be so treated by the Chapter 13 Trustee for purposes of payment thereon;

7. To determine that upon completion of all plan payments and entry of a discharge in this case, Washington Mutual is ordered to reconvey the Deed of Trust and otherwise take such steps as are required to clear title, free of said lien, as to the above described property; and,

8. **To determine that should this case be dismissed or converted to another chapter under title 11 prior to completion of all plan payments and entry of a discharge pursuant to 11 U.S.C. § 1328, the lien shall remain valid.**

Respectfully submitted,

LAW OFFICES OF IRWIN M. FRIEDMAN

[signature]

IRWIN M. FRIEDMAN
Attorney for Debtors

Notice of Debtors' Motion For Order Determining Value of Real Property, et al.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

ALEX HIDEKI OKUDA AND JUNKO OKUDA ("Debtors") filed for relief under Chapter 13 of the United States Bankruptcy Code on October 8, 2009. Debtors' Schedule A lists Debtors' principal place of residence located at 65 Coronado Cay Lane, Aliso Viejo, CA 92656 (the "Real Property")(see attached as **Exhibit "1,"** a true and correct copy of Debtors' Schedule A filed on October 8, 2009). Debtors acquired the Real Property in 2004.

Debtors' Schedule D lists the two deeds of trust held against the Real Property as Indy Mac("Indy Mac") and Washington Mutual ("Washington Mutual") (see attached as **Exhibit "2,"** a true and correct copy of Debtors' Schedule D filed on October 8, 2009). Upon commencement of the instant case, the Debtors were indebted to Indy Mac, the beneficial holder of a promissory note secured by a first deed of trust on the Real Property. Indy Mac has an outstanding balance of approximately $424,108.00 (see attached **Declaration of Alex Hideki Okuda).** The Debtors are also indebted to Washington Mutual, the beneficial holder of a promissory note secured by a second deed of trust. Washington Mutual has an outstanding balance of $79,463.00 (see attached Declaration of Alex Hideki Okuda).

The first and second position lenders are and have been at all times secured by legally recorded Deeds of Trust recorded against the Real Property.

The Debtors assert and The Appraisal Report conducted by Richard Gould establishes that the fair market value of the Real Property is approximately $285,000.00 based on sales comparison approach regarding similar homes in the area (see attached as **Exhibit "3,"** a true and correct copy of the Appraisal Report dated July 13, 2009). The fair market value of the Real Property is less than the total payoff balance owed to Indy Mac as first trust deed holder.

Notice of Debtors' Motion For Order Determining Value of Real Property, et al

## LEGAL DISCUSSION

The issue before this Court is whether a Chapter 13 debtor may void a junior lien on a homestead if senior liens exceed the fair market value of the property. Pursuant to current case law and 11 U.S.C. §506(a), a lien may be avoided in Chapter 13 cases, and the rights of a lien holder modified under 11 U.S.C. §1322(b)(2) it the second or junior deed of trust on the Debtors' Real Property is determined to be wholly unsecured, and the junior lien may thus be extinguished and treated as an unsecured claim for purposes of payment in accord with the terms of the Confirmed Chapter 13 Plan.

**A.  DEBTORS SEEKS A DETERMINATION OF THE VALUE OF THE REAL PROPERTY PURSUANT TO RULE 3012 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE.**

Debtors seek a determination that the value of the Real Property was $285,000.00 as of the date of filing.

Rule 1001 of the Federal Rules of Bankruptcy Procedure ("FRBP") states that "these rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding."

The objective of "expeditious and economical administration" of cases under the Bankruptcy Code has frequently been recognized by the courts to be "a chief purpose of the bankruptcy laws." See Katchen v. Land, 382 U.S. 323, 328 (1966).

With this goal in mind and pursuant to FRBP Rule 3012, the court may determine the value of a claim secured by a lien on property in which the estate has an interest, on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

In this case, the Debtors have provided this Court with a full appraisal of the Real Property showing a market value of $285,000.00. The appraisal was completed on July 2, 2009, prior to filing of this case, and it was prepared by a disinterested, and duly qualified expert within the meaning of Fed. R. Evid. 702 **(See, Exhibit "3")**.

Accordingly, Debtors request that this Court determine the value of the Real Property to be $285,000.00.

**B.  DEBTORS SEEKS A DETERMINATION OF THE EXTENT OF THE SECURED CLAIMS PURSUANT TO 11 U.S.C. §506(A) OF THE BANKRUPTCY CODE.**

Debtors seek a determination that, given the value of the Peal Property, the first deed of trust is undersecured and the second deed of trust is wholly unsecured.

FREP Rule 3012 implements section 506(a) of the Bankruptcy Code with respect to valuation of a secured claim in order to determine the extent to which it is secured or unsecured.

11 U.S.C. §506(a)(1) states, in relevant part:

> "An allowed claim of a creditor secured by a lien on property in which the estate has an interest,...is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property,... and is an unsecured claim to the extent that the value of such creditor's interest...is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

In short, Section 506(a) separates an undersecured creditor's claim into two parts: a secured claim to the extent of the value of the collateral; and, an unsecured claim for the balance of the claim.

When Section 506(a)(1) is applied to claims such as mortgages, a mortgage would not be a "secured claim" to the extent that the claim exceeds the value of the property on which it has a security. In <u>Zimmer v. PSB Lending Corp. (In re Zimmer)</u> 313 F.3d 1220, 1223 (9th Cir. 2002), the court stated that the term "secured claim" is a term of art, and a claim secured by a lien on the property is not necessarily a "secured claim," and it may be modified and avoided to the extent the claim exceeds the value of the property, after deduction of the senior liens or encumbrances.

Additionally, 11 U.S.C. §506(d) states, "to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."

Section 506 is a section of general applicability, and a Chapter 13 case allows bifurcation of a claim into secured and unsecured portions. Wilson v. Commonwealth Mortgage Corp., 895 F.2d 123, 22 C.B.C. 561 (3rd Cir. 1990).

Here, Indy Mac's claim is for $424,108.00, but the value of the Real Property is only $285,000.00. Hence, only $285,000.00 of Indy Mac's claim is secured, while the balance of $139,108.00 is unsecured. Washington Mutual's claim of $79,463.00 is not "secured", because the value of the Real Property is less than the amount due to the first or senior mortgage holder, Indy Mac, leaving no remaining value to serve as security for the second mortgage, Washington Mutual.

Accordingly, Indy Mac's claim is undersecured by $139,108.00 and Washington Mutual's claim is wholly unsecured.

Therefore, Debtors request that this Court determine that the first deed of trust held by Indy Mac is undersecured, and that the second deed of trust held by Washington Mutual is wholly unsecured.

C. **AS A WHOLLY UNSECURED LIENHOLDER, WASHINGTON MUTUAL'S RIGHTS MAY BE MODIFIED UNDER 11I.1 U.S.C. §1322(H)(2) AND IT TREATED AS AN UNSECURED CREDITOR.**

This Court may modify Washington Mutual's purported secured claim if this claim is deemed an unsecured claim under 11 U.S.C. §1322(b)(2).

11 U.S.C. §1322(b) (2) states, in relevant part:

"The [Chapter 13] plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

This antimodification clause bars a debtor from modifying the rights of a creditor who has a claim secured only by the debtor's principal residence.

In Nobleman v. American Savings Bank, 508 U.S. 324 (1993) the United States Supreme Court held that if a mortgage was partially secured by value a Chapter 13 debtor could not divide the mortgage, pursuant to 11 U.S.C. §506(a), into secured and unsecured parts, and treat only the secured part as subject to the antimodification clause. In Nobleman, the debtor's principal residence had a value of $23,500.00, and the first trust deed holder had a claim for $71,335.00, thus the hank's claim was at least partially secured by the debtor's home. Accordingly, under Nobleman if any portion of the claim is secured then the full balance of the mortgage is governed by the antimodification clause and a lien cannot be stripped. However, by application of Nobleman, if a lien is wholly unsecured, it can be stripped.

Many courts, even prior to the passage of the Reform Act of 1994, held that Nobleman was inapplicable when senior liens were in excess of the fair market value of the property. The passage of the Bankruptcy Reform Act of 1994 did not change the ability to strip the lien of a wholly unsecured creditor, it merely provided that a loan which fully matured prior to the filing of a Chapter 13 petition, or a loan which matures during the life of the plan, may be paid through the plan [U.S.C. §1322(b)(2)].

Courts have consistently distinguished between a partially secured claim, as in Nobleman, and facts involving a wholly unsecured lien holder. Most reported decisions have rejected the proposition that Nobleman prohibits modification of a totally unsecured lien on a Chapter 13 debtor's principal residence. These Courts, along with the 9th Circuit Bankruptcy Appellate Panel, interpret Nobleman to require the existence of at least an allowable partially secured claim as the predicate for protection from the antimodification clause in 11 U.S.C. §1322(b)(2).

In the 9th Circuit Bankruptcy Appellate Panel Case, In re Lam, the Court held that:

"The Nobleman decision holding that section 1322(b) bars a chapter 13 plan from modifying the rights of holder of claims, secured only by the debtor's principal residence, does not apply to holder of totally unsecured claims. The extension of the protections of section 1322(b) to wholly unsecured lien

holders is contrary to the provision of the bankruptcy code allowing dischargeability of unsecured claims."

In In re Lam, 121 B.R. 36, 41 (9th Cir. B.A.P. 1997), the Lam court concurred with the holding of several cases that permitted modification of secured creditor's claims that were wholly unsecured. Id. at 41.

Similarly, the court in In re Geyer, 203 B.R. 726 (S.D. Cal. 1996), held that a Chapter 13 debtor may strip off a lien on his or her primary residence when the lien holder's interest is totally unsecured. The court stated:

> "[T]he term 'secured claim' as used in section 1322(b)(2) has the same meaning as the term `secured claim' in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protection against modification contained in section 1322(b)(2). A chapter 13 debtor may 'strip-off' a lien on his or her primary residence under the plan or under 506(d) when the lien holder's interest is totally unsecured. Id. at 729."

Furthermore, the court in In re Plouffe, 15 B.R. 198, (Bankr. D. Conn. 1993), determined that a mortgagee could claim protection from modification of its rights granted by section 1322(b)(2) only if it qualified as the holder of fully or partially secured claim, as determined by section 506(a). According t.o the court, "there is neither a logical nor rational basis for a creditor holding a completely unsecured claim to be protected from claim modification in a bankruptcy case simply because the creditor had obtained a lien on the homestead pre-petition." Id. at 200.

Here, unlike Nobleman, the lien to be stripped is not the first but the second trust deed. The Real Property to be retained in the Chapter 13 Plan is the Debtors' principal residence. The value of the Real Property is only $285,000.00. However, the value of the first deed of trust is approximately $424,108.00 (see attached Declaration of Alex Hideki Okuda). The secured interest of the second deed of trust is nonexistent because there is absolutely no equity to which the second deed or trust can attach.

Thus, Washington Mutual cannot seek protection from modification under 11 U.S.C. §1322(b)(2), and Debtors may modify the claim and avoid Washington Mutual's lien.

Therefore, this Court should extinguish, reconvey, and treat as unsecured for purposes of the instant Chapter 13 proceeding, the second deed of trust held by Washington Mutual.

### D. IN RE DEWSNUP SHOULD NOT PREVENT THE MODIFICATION OF WASHINGTON MUTUAL'S CLAIM BECAUSE IT IS DISTINGUISHABLE FROM THE INSTANT CASE.

Washington Mutual's claim should be extinguished and treated as unsecured in spite of Dewsnup v. Tim (In re Dewsnup), 502 U.S. 410, 112 S. Ct. 773, 116 L.Ed.2d 903 (1992).

In re Dewsnup involved a Chapter 7 case. In Dewsnup, the court prohibited Chapter 7 debtors from using Section 506 to strip down liens on an undersecured claim. Accordingly, there was no discussion pertaining to the modification of the rights of secured claims in a Chapter 13 case.

Rather, the Chapter 13 cases cited above turn on the way courts interpret section 1322(b)(2), not the treatment in a Chapter 7 case under Dewsnup. The cited cases explain that under section 1322(b)(2), a Chapter 13 plan may modify the rights of secured claims, other than a claim secured only by a security interest in real property that is the debtors' principal residence. Section 1322(h)(2) in light of section 506(a), does not preclude modification by a Chapter 13 Plan of the rights of holders of unsecured claims; to wit, junior mortgages which are completely unsecured.

Justice Scalia, in his dissent in Dewsnup, points out the difference between lien stripping in a Chapter 7 case and in a Chapter 13 case when he states that:

> "Respondents assume, for example that a debtor in a Chapter 13 cannot strip down a mortgage placed on the debtor's home, but that assumption may beg the very question the Court answers today. True, Section 1322(b)(2) provides that Chapter 13 filers may not `modify the rights of secured claims,' that are `secured only by a security interest in real property that is the debtor's principal

11

residence.' But this can be and has been read, in light of Section 506(a), to prohibit modification of the mortgagee's rights only with respect to the operation of his claim that is deemed secured under the Code. See, e.g., In re Hart, 923 F.2d 1410, 1415 (CA 10 1991); Wilson v. Commonwealth Mortgage Corp., 895 F.2d 123, 127 (CA 3 1990); Dewsnup, 502 U.S. 410, 428, 112 S. Ct., 773, 784."

In spite of Dewsnup, Judge Flenning in Denver v. Internal Revenue Service, 164 B.R. 132 (C.D. Cal. 1994), held that stripping an IRS lien on a principal residence is permissible in a Chapter 11 case. The Supreme Court specifically reserved the question as to the applicability of its ruling in Dewsnup to cases under the reorganization chapters. Denver, 164 B.R. 132, 133. In Denver, the court discussed the issue of lien stripping in Chapter 13 cases and cited the 10'" Circuit case of In re Hart where the court reasoned:

> "The dispositive issue in this case is whether Eastland's undersecured loan may be bifurcated into two claims by applying general principals of Section 506(a) to the mortgage and then protecting only the secured claim by provisions of Section 1322(b). We believe it can. 923 F.2d 1410, 1413 (10th Cir. 1991)."

After citing In re Hart, in Denver the court went on to state that:

> "if Section 506 does not permit debtors to bifurcate undersecured claims and strip down liens to their collateral value, then all secured creditors would be freed of any concern that debtors could reduce the amount of their liens while retaining property. If Congress did not intend to allow lien stripping in general in Chapter 13 cases, then why would it bother to draft the exclusionary language of Section 1322. As Justice Stevens' concurring opinion in Nobleman emphasized, legislative history of Section 1322(10)(2) reflects Congressional desire to provide special protections to residential lenders. Denver at 141."

Here, In re Dewsnup, should not prevent modification of Washington Mutual's claim because it is distinguishable from the instant case. Unlike Dewsnup, Debtors filed a Chapter 13 case. Accordingly, the language of the relevant Bankruptcy Code sections, and the decisions interpreting those sections, warrant a finding that Washington Mutual's lien arising from the second deed of trust on Debtor's Real Property may be extinguished. Additionally, its claim may he deemed an unsecured claim in the instant proceeding.

## CONCLUSION

Based on the foregoing, Debtors respectfully request this Court to enter an order which:

1. Determines the value of certain real property commonly known as 65 Coronado Cay Lane, Aliso Viejo, CA 92656, County of Orange, of the Records of Orange County (the "Real Property"), to be $285,000.00 as of the date of filing;

2. Determines the secured claim of Indy Mac ("Indy Mac") with respect to the Real Property is senior to that of Washington Mutual ("Washington Mutual"), and that the amount of Indy Mac's secured claim exceeds the value of the Real Property;

3. Determines that Washington Mutual's claim under 11 U.S.C. §1322(b)(2) and Bankruptcy Rule 3013, is wholly unsecured because the underlying collateral has insufficient equity for a lien to attach;

4. Finds that modification of Washington Mutual's claim is therefore appropriate under 11 U.S.C. §1322(b)(2), and, that Washington Mutual may be provided for as an unsecured claim in the Debtors' Chapter 13 plan;

5. Determines that the lien of Washington Mutual, secured by a second deed of trust under loan number XXXXXXXX5391 and having a payoff balance of $79,463.00 is completely unsecured and upon completion of all plan payments and entry of discharge in this case pursuant to 11 U.S.C. § 1328, the lien will be void and will not constitute an encumbrance on the following described real property: Certain real property commonly known as 65 Coronado Cay Lane, Aliso Viejo, CA 92656, County of Orange, of the Records of Orange County;

6.  Determines that for purposes of this Chapter 13 Plan, the underlying debt of Washington Mutual in the amount of $79,463.00 shall be deemed unsecured, and any Proof of Claim filed shall be so treated by the Chapter 13 Trustee for purposes of payment thereon;

7.  Determines that upon completion of all plan payments and entry of a discharge in this case, Washington Mutual is ordered to reconvey the Deed of Trust and otherwise take such steps as are required to clear title, free of said lien, as to the above described property; and,

8.  Determines that should this case be dismissed or converted to another chapter under title 11 prior to completion of all plan payments and entry of a discharge pursuant to 11 U.S.C. § 1328, the lien shall remain valid.

Respectfully submitted,

LAW OFFICES OF IRWIN M. FRIEDMAN

Dated: 7/15/09                    /s/ Irwin M. Friedman
                                  IRWIN M. FRIEDMAN
                                  Attorney for Debtors

**DECLARATION OF ALEX HIDEKI OKUDA AND JUNKO OKUDA**

I, Alex Hideki Okuda, declare as follows:

1. I am the joint debtor in the herein Chapter 13 Bankruptcy, case number 8:09-bk-20860. I have personal knowledge of the facts stated in this declaration and could and would testify under oath thereto if called as witnesses.

2. My wife and I filed this case on October 8, 2009.

3. My wife and I are the owners of real property located at 65 Coronado Cay Lane, Aliso Viejo, CA 92656, County of Orange, of the Records of Orange County (the "Real Property").

4. We live on the Real Property, it is our principal residence. A true and correct copy of my Schedule of Real Property is attached as **Exhibit "1"** and is incorporated herein by reference.

5. My wife and I purchased the Real Property in November 2004.

6. The first mortgage on the Real Property is held by Indy Mac ("Indy Mac") secured by a first deed of trust under loan number XXX9620 and it had a total payoff balance of $424,108.00 as of the date of filing. A true and correct copy of Indy Mac's Monthly Mortgage Statement Is attached hereto and is incorporated by reference as **Exhibit "4."**

7. The second mortgage on the Real] Property is held by Washington Mutual. ("Washington Mutual") secured by a second deed of trust under loan number XXXXXXXX5391 and it had a payoff balance of $79,463.00 as of the date of filing. A true and correct copy of Washington Mutual's Monthly Mortgage Statement is attached hereto and is incorporated by reference as **Exhibit "5."**

8. On or about June 2009, we retained California licensed real estate appraiser, Richard Gould, for the purpose of ascertaining the value of the subject property. See Declaration of Richard Gould, attached hereto.

9. I have no personal or business relationship with any employee of Richard Gould.

10. I am respectfully requesting this Court to determine the value of the subject property end the secured status of Washington Mutual's claim.

11. I believe that Washington Mutual's claim is wholly unsecured and therefore subject to avoidance upon completion of our proposed Chapter 13 plan, in that the fair market value of the subject property is $285,000.00 in my opinion, which is less than the balance owed on the First Trust Deed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and complete to the best of my knowledge. Executed at Gardena, California on this 28 day of July, 2009.

_____
Alex Hideki Okuda

## DECLARATION OF RICHARD GOULD

I, Richard Gould, declare as follows:

1. I am a real estate appraiser, State of California license number 020795. I was hired by Mr. and Mrs. Okuda ("Debtors").

2. I make this declaration based upon my personal and firsthand knowledge, my education, training, and experience in the field of real estate appraisal and if called as a witness, I could and would competently and truthfully testify under oath thereto.

3. I have been doing appraisals since 1956 and have qualified as an expert in the Superior court on many occasions.

4. I perform approximately 15 to 20 residential appraisals per month.

5. On or about July 2, 2009, I had occasion to conduct an appraisal of the Real Property. Attached hereto and incorporated by reference herein as **Exhibit "3"** is a true and correct copy of the appraisal report.

6. In preparing this on-site appraisal report, I performed market research, inspected the residence, both interior and exterior, measured the Residence to determine the square footage, and surveyed the immediate neighborhood.

7. In determining the fair market value of the Real Property, I used both the sales comparison approach and the cost approach, with the greater weight given to the sales comparison approach. I consider the sales approach to be the most reliable in determining the fair market value because it more accurately simulates buyers' perceptions and actions.

8. Based upon my observations, inspection of the subject property, and market research as well as my training, education and experience as a residential appraiser, it is my professional opinion that the Real Property has a fair market value of $285,000.00 as of July 2, 2009.

9. I have no present or contemplated future interest in the Real Property described in the appraisal report attached hereto as Exhibit "3." Neither my employment or compensation for this appraisal is contingent upon the value found.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and complete to the best of my knowledge. Executed at Gardena, California, on this 29d day of July, 2009.

_____
Richard Gould